USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 7, 2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA

     v.

ARIEL ACOSTA,

            Defendant.
-------------------------------------------------------X

17-CR-487 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Defendant Ariel Acosta, represented by counsel, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Def.'s Mot., ECF No. 339.) The government opposes Acosta's motion. (Gov't Opp'n, ECF No. 345.) For the reasons set forth below, Acosta's motion for compassionate release is DENIED.

## BACKGROUND

On August 9, 2017, Acosta was arrested in connection with his involvement in a drug trafficking organization ("DTO") that distributed large quantities of heroin and crack cocaine in the Bronx, and engaged in the unlicensed sale of firearms. (Presentence Investigation Report ("PSR") ¶¶ 19-20, ECF No. 218; Gov't Opp'n at 1-2.)

On April 30, 2018, Acosta pleaded guilty to (1) conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and (2) unlicensed dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A).[1] (J. at 1, ECF No. 248; Gov't Opp'n at 2.) On November 13, 2018, the Court sentenced Acosta to 160 months'

---

[1] Acosta was held accountable for distributing at least 112 grams of crack cocaine and trafficking eight firearms, including at least one firearm with an altered or obliterated serial number. (PSR ¶ 31.)

imprisonment on the conspiracy charge, to run concurrently with 60 months' imprisonment on the firearms charge, followed by four years of supervised release. (J. at 2-3; Def.'s Mot. at 1; Gov't Opp'n at 2-3.)

Acosta is currently incarcerated at USP Canaan in Waymart, Pennsylvania and his projected release date is April 10, 2029. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 3, 2025).

## LEGAL STANDARD

Pursuant to Section 3582(c)(1)(A), a court may reduce a defendant's sentence if the court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Three requirements must be met before a court can grant such relief. First, a defendant must "fully exhaust[]" all administrative remedies with the Bureau of Prisons ("BOP"). *Id.* Second, a defendant must show that "extraordinary and compelling reasons warrant such a reduction."[2] *Id.* Third, the Section 3553(a) sentencing factors must support early release. *Id.*

## DISCUSSION

I.  **Acosta's Motion is Properly Before the Court**

A defendant may move for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his] facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). The parties disagree on whether Acosta has exhausted his

---

[2] The Court's analysis as to whether a defendant has demonstrated extraordinary and compelling reasons is now controlled by the amended version of U.S.S.G. § 1B1.13, effective November 1, 2023.

administrative remedies.  *Compare* Def.'s Mot. at 3-4, *with* Gov't Opp'n at 5 n.3.  The government acknowledges that Acosta pursued relief through the administrative process, and that BOP denied both of Acosta's requests for compassionate release on October 28, 2022 and September 15, 2023, respectively.  (Def's Mot., Exs. A & B.)  The government nonetheless argues that Acosta failed to exhaust his administrative remedies with respect to specific arguments, because Acosta failed to raise, in the administrative process, the following reasons he now argues support compassionate release:  his conditions of confinement during the COVID-19 pandemic, his long-COVID symptoms, his mother's incapacitation, changes in DOJ's position on sentencing of crack cocaine offenses, and his release plan.  (Gov't Opp'n at 5 n.3.)

The Court holds that Acosta has satisfied Section 3582(c)'s administrative exhaustion requirement, even though his requests for compassionate release directed to BOP do not assert all of the arguments raised in his current motion.  Courts in this district agree that the compassionate release statutory scheme does not require litigants to raise every argument that may support compassionate release with BOP.  *See e.g.*, *United States v. Torres*, 464 F. Supp. 3d 651, 657 (S.D.N.Y. 2020) (Stein, J.); *Simon v. United States*, 2024 WL 3666364, at *4 (S.D.N.Y. Aug. 5, 2024) (Ramos, J.).  This Court, too, does not require issue exhaustion, particularly where, as here, the defendant has made two separate requests to BOP for compassionate release over the span of nearly one year, and both were denied.  *See United States v. Delgado*, 582 F. Supp. 3d 136, 139-40 (S.D.N.Y. 2022) (Wood, J.).  The motion is ripe for judgment.

## II. Acosta Has Not Demonstrated "Extraordinary and Compelling" Reasons for Compassionate Release

In his motion, Acosta argues that extraordinary and compelling reasons exist because (1) he has endured harsh conditions of confinement due to COVID-19; (2) he contracted COVID-19

3

in prison, continues to experience long-COVID symptoms, and has other health concerns which have not been adequately treated by BOP; (3) his mother, the primary caregiver for his two minor siblings, is incapacitated; and (4) he is rehabilitated. (*See* Def.'s Mot. at 3; *see generally* Def.'s Reply.)

First, the challenging prison conditions that Acosta states he has experienced are not extraordinary and compelling because they are generally experienced by inmates nationwide. *See e.g.*, *United States v. Farmer*, 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) (Swain, C.J.) ("[G]eneralized statements about the conditions of confinement do not constitute [extraordinary and] compelling reasons for compassionate release."); *United States v. Stewart*, 2024 WL 5046927, at *2 (S.D.N.Y. Dec. 9, 2024) (Seibel, J.).

Second, Acosta's claim that he suffers from ongoing respiratory health issues resulting from COVID-19 and pneumonia infections, Def's Mot. at 9-10, does not demonstrate an extraordinary and compelling reason for compassionate release. The Court has carefully reviewed Acosta's BOP medical records concerning his treatment while in BOP custody, including additional updated records the Court requested and received in February 2025. Although the records confirm that Acosta contracted COVID-19 in November 2021 and pneumonia in December 2022, and has experienced shortness of breath and chest pains when exercising, Acosta has not demonstrated that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." *See* U.S.S.G. § 1B1.13(b)(1)(C). After testing positive for COVID-19, medical staff examined Acosta daily for nine days, each day noting that he "denie[d] s/s [signs or symptoms] of covid such as cough, loss of taste or smell, GI disturbances" and regularly "offer[ed] no complaints." And after medical staff diagnosed Acosta

4

with pneumonia, they took a chest x-ray, prescribed medication for bacterial infections, conducted follow-up visits with additional chest x-rays for comparison purposes, prescribed a nebulizer treatment for Acosta's reported congestion, and ordered tests in response to Acosta's request for bloodwork.  Acosta's medical records reflect that he has continued to receive consistent care for his health issues, even after his infections resolved.  For example, after Acosta requested to be seen in August 2024 due to a persistent dry cough, medical staff visited Acosta, examined him, conducted a CT scan, and prescribed Spiriva to manage Acosta's symptoms. BOP medical staff also noted that they would continue to monitor Acosta's symptoms and schedule follow-up appointments with the physician.  There is nothing to suggest that Acosta's asserted long-COVID symptoms place him at risk of "serious deterioration in health or death" or are incapable of treatment while in BOP custody.  U.S.S.G. § 1B1.13(b)(1)(C); *accord United States v. Haylock*, 2024 WL 4691023, at *8 (S.D.N.Y. Nov. 6, 2024) (Failla, J.) (finding that defendant's asthma, chronic sinusitis, chronic migraines, and an abnormal liver function test did not establish an extraordinary and compelling reason warranting compassionate release); *United States v. Radulescu*, 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16, 2024) (Stein, J.) (finding that defendant's asthma, emphysema, bronchiectasis, and heart condition did not establish an extraordinary and compelling reason warranting compassionate release).

      Third, Acosta has not established an extraordinary and compelling circumstance based on family hardship.  Acosta states that his mother is suicidal, facing eviction, and caring for his two youngest siblings on her own.  (Def.'s Mot. at 11.)  But Acosta has not demonstrated that he is the only available caregiver for his mother and siblings.  He admits that his older sister could potentially step in, although she has a challenging work schedule and is estranged from his mother.  *Id.* at 12.  While the Court acknowledges that these family circumstances are difficult,

5

they do not rise to the level of extraordinary and compelling. *See, e.g.*, *United States v. Christopher*, 2024 WL 4707909, at *4 (S.D.N.Y. Nov. 7, 2024) (Cronan, J.) (denying compassionate release because defendant did not establish that he was his family member's only available caregiver); *Sanchez v. United States*, 2023 WL 144220, at *3 (S.D.N.Y. Jan. 10, 2023) (Caproni, J.) (same).

Finally, Acosta argues that his post-sentence rehabilitation constitutes an extraordinary and compelling reason for release. The Court commends Acosta for his efforts at rehabilitation, especially his work as a Suicide Companion and as a Peer Mentor in the Challenge Program, and recognizes the positive impact Acosta has had on fellow inmates. (Def.'s Mot., Ex. H.) It is well established, however, that "[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also* U.S.S.G. § 1B1.13(d). Acosta's rehabilitative efforts do not, either alone or in combination with his other arguments, establish that extraordinary and compelling reasons exist for compassionate release.

### III.  The Section 3553(a) Factors Weigh Against Release

Even if Acosta could demonstrate an "extraordinary and compelling" reason for a sentence reduction, the § 3553(a) factors do not support his early release. Although Acosta had a difficult upbringing and appears to suffer from health challenges following COVID-19 and pneumonia infections, these factors do not outweigh the seriousness of his offense. As the Court stated at sentencing, Acosta's offense "present[ed] one of the most serious series of crimes for which [the Court had] sentenced someone. The number of guns, . . . a silencer . . . ammunition . . . all of these suggest a level of willingness to perpet[r]ate violence without thought of the harm that could be done." (Sent'g Tr. 15:4-10.) The Court maintains its view that Acosta's sentence

is necessary to reflect the seriousness of the offense. *Id.* at 15:23-24. In addition, Acosta's sentence is necessary to promote general deterrence. *See id.* at 16:1-3.

The Court has considered Acosta's eloquent February 14, 2025 letter to the Court that emphasizes the need of Acosta's son for his father. (ECF No. 356.) The Court is sympathetic to Acosta and his son, but the factors cited above militate against release or sentence reduction on that ground.

The Court finds that the § 3553(a) factors weigh against Acosta's release.[3]

## CONCLUSION

For the foregoing reasons, Acosta's motion for compassionate release pursuant to § 3582(c)(1)(A) is DENIED without prejudice to renew at a later date, if new facts warrant renewal. The Clerk of Court is respectfully directed to close the pending motion at ECF No. 339.

SO ORDERED.

Dated: New York, New York
      March 7, 2025

                                                        */s/ Kimba M. Wood*
                                                        KIMBA M. WOOD
                                                United States District Judge

---

[3] Acosta also cites his young age when he engaged in the DTO and committed the prior offenses which formed the basis for his career offender status. The Court considered both before sentencing Acosta, taking into account counsel's repeated emphasis of Acosta's young age, and even waited to enter judgment until after Acosta's 25th birthday, to ensure his placement in a lower security facility with access to more services and programming. (Sent'g Tr. at 3:7-12; 8:19-20; 18:17-19:3; 19:13-16.)

In addition, Acosta urges the Court to consider changes in U.S. Department of Justice policies regarding charging and sentencing recommendations in crack cocaine cases. As Acosta admits, however, these policies are not the law and would not have changed this Court's sentence, because his career offender status controlled his criminal history category, and thus, the ultimate Guidelines range. (Def.'s Mot. at 16-18.)